**Justin BRINKER, Gary W. Brinker and Barbara J. Brinker, Plaintiffs–Respondents,**

v.

**Jay JOHNSON, Defendant,**

**and**

**Missouri Property and Casualty Insurance Guaranty Association, Intervenor–Appellant.**

**No. 66798.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Aug. 1, 1995.

Rehearing Denied Sept. 8, 1995.

John M. McIlroy, James Millan, McIlroy & Millan, Bowling Green, for intervenor-appellant.

Stephen F. Meyerkord, Jonathan E. Fortman, St. Louis, for respondents-plaintiffs.

John D. Warner, Jr., St. Louis, for defendant.

DOWD, Judge.

Intervenor Missouri Property and Casualty Insurance Guaranty Association (the Association) appeals after the trial court overruled its Motion to Set Aside the Default Judgment in which Plaintiffs were awarded $170,000 in damages for personal injuries. We affirm.

Plaintiff Justin Brinker was injured in a high school weight lifting class taught by Defendant Jay Johnson. Justin Brinker, along with his parents, filed suit against Defendant Johnson for damages on January 24, 1992. Defendant Johnson was served with suit papers approximately January 29, 1992, after which he immediately notified his superintendent. An adjuster affiliated with Gay & Taylor subsequently contacted Defendant Johnson. Gay & Taylor was an adjusting company working with the school district's insurer, Employers Casualty Company.

On February 7, 1992, Plaintiffs' attorney wrote a letter to an adjuster for Gay & Taylor, Kristie Glenn, confirming a telephone conversation in which he agreed to extend the time for Defendant Johnson's responsive pleadings until April 1, 1992. On February 13, 1992, Glenn sent a letter acknowledging the time extension. After this letter, Gay & Taylor's branch manager, Victor White, apparently took over the claim. In a March 5, 1992 letter, White offered a settlement but stated it would be withdrawn should a suit be filed. (A suit had been filed January 24, 1992, and Defendant Johnson was served January 29, 1992.) Plaintiffs' attorney did not respond. White sent another letter June 11, 1992, informing Plaintiffs' attorney he had been advised a suit was filed but that papers had not yet been served. Responsive pleadings were never filed on behalf of Defendant Johnson.

Plaintiffs filed a Motion for Default Judgment July 1, 1992, and a hearing on the motion occurred July 6, 1992. The trial court thereafter entered a default judgment on behalf of Plaintiffs awarding total damages of $170,000.

On July 7, 1992, the day after the hearing on the default judgment, Plaintiffs' attorney sent White a letter rejecting the settlement offer and restating his previous demand for $100,000. Unaware of the default judgment, White sent a response on August 11, 1992, in which he stated Plaintiffs should perfect service on Defendant Johnson and go on with the suit. No further communication between Plaintiffs and White, or any other employee of Gay & Taylor, apparently occurred.

The final events in this process began when the school district's insurance company, Employers Casualty, was declared insolvent on February 11, 1994, approximately eigh-

teen months after the default judgment. Defendant Johnson then filed a Motion to Set Aside the Default Judgment on March 24, 1994. The Association filed a Motion to Intervene along with a Motion to Set Aside the Default Judgment pursuant to § 375.778.4, RSMo Cum.Supp.1993[1] on April 18, 1994. The Motion to Intervene was granted. Both Motions to Set Aside were overruled after a hearing on April 19, 1994. The Association and Defendant Johnson appealed; however, Defendant Johnson subsequently dismissed his appeal. The Association's appeal remains and is now before us.

First, we find it necessary to provide some background on the Association and how it relates to this case. The Missouri Property and Casualty Insurance Guaranty Association is a nonprofit legal entity created by statute. § 375.772 (formerly § 375.785, RSMo 1986). Its responsibility for claims resulting from the insolvency of covered insurance companies is mandated by statute. *Pannell v. Missouri Ins. Guaranty Assoc.*, 595 S.W.2d 339, 352 (Mo.App.1980). The Association was created to protect persons insured from the effects of insolvency of certain types of insurers. *Clements v. Pittman*, 765 S.W.2d 589, 590 (Mo. banc 1989).

■ The Association's first point on appeal argues the trial court erred when it overruled the Motion to Set Aside the Default Judgment because the insurance company responsible for Defendant Johnson's case was insolvent, making the Association obligated to defend the suit according to § 375.778.4. The section of this statute to which the Association refers states as follows:

> ... As to any covered claims arising from a judgment under any decision, verdict or finding based on the default of the insolvent insurer or its failure to defend an insured, the association, either on its own behalf or on behalf of such insured, may apply to have such judgment, order, decision, verdict or finding set aside by the same court or administrator that made such judgment, order, decision, verdict or finding and shall be permitted to defend

against such claims on the merits. § 375.778.4.

We find § 375.778.4 is silent as to timing deadlines and requirements. Therefore, we look to the applicable rules regarding obtaining relief from entered judgments or orders. A party may file a motion for relief from a final judgment or order based upon excusable neglect, fraud, misrepresentation, misconduct of an adverse party, or if the judgment is void, irregular or satisfied. Rule 74.06(b). This motion must be made within one year after the judgment or order was entered. Rule 74.06(c).

The insurance company was declared insolvent approximately eighteen months after the default judgment was entered, and the Association's motion was filed approximately two months later. The Association is, therefore, precluded from obtaining relief from the default judgment utilizing Rule 74.06(b). Point denied.

In its second point on appeal, the Association argues that the trial court erred when it refused to set aside the default judgment because the judgment was procured by fraud and misrepresentation. The Association claims Plaintiffs' attorney knew prior to the default that the insurance company's adjusters believed Defendant Johnson had not been served and by his actions, perpetuated the misconception that led to the default judgment.

■ While Rule 74.06(b) provides deadlines as discussed under Point I for obtaining relief from a final judgment or order based upon fraud or misrepresentation, the legislature did not impose these time restraints on independent actions in equity seeking to set aside judgments based on fraud upon the court. Rule 74.06(d); *Orrock v. Crouse Realtors, Inc.*, 813 S.W.2d 929, 931 (Mo.App. 1991). The Association argues extrinsic fraud perpetrated by Plaintiffs induced Defendant Johnson to default, and he was therefore unable to present his case or defense. To convince us to set aside the default judgment on equitable grounds, the Association must show: (1) a meritorious defense, (2) good reason or excuse for the

---

**1.** All statutory references will be to RSMo Cum.     Supp.1993 except as noted.

default, and (3) Plaintiffs will not suffer injustice by setting aside the judgment. *Sprung v. Negwer Materials, Inc.*, 775 S.W.2d 97, 99 (Mo. banc 1989).

■ We need only discuss the second requirement, that of good reason or excuse. Good reason or excuse can be shown when the default occurred because of an accident, a mistake, inadvertence, mischance or some unavoidable circumstance *"unmixed with neglect or inattention ..." Id.; See also Orrock,* 813 S.W.2d at 932. Here, the default occurred at least partially because of the insurance adjuster, Mr. White's, neglect of and inattention to the case. He could have discovered Defendant Johnson had been served by placing a telephone call to the court clerk or to Defendant Johnson. At least one person at Gay & Taylor, Kristie Glenn, knew suit had been filed and Defendant Johnson had been served. Furthermore, Ms. Glenn wrote a letter to Plaintiffs which should have been in Defendant Johnson's file stating Gay & Taylor was aware suit had been filed and Defendant Johnson had been served. The Association's brief merely argues Rule 74.06(d) does not "include the necessity that a movant or petitioner asking to set aside a judgment be free from negligence, inattention or neglect on his part." Rule 74.06(d) states: "This Rule 74.06 does not limit the power of the court to entertain an independent action to relieve a party from a judgment or order or to set aside a judgment for fraud upon the court...." The rule authorizes an independent action, it does not provide the applicable procedures and requirements for such an action. Those procedures and requirements are dictated by the case law noted above. We find the above-noted neglect and inattention contributed to the default judgment. The Association is, therefore, precluded from equitable relief. Point denied.

Finally, the Association claims the trial court erred in refusing to set aside the default judgment because as it is written, the Association cannot comply with § 375.775.1(1)(b), RSMo 1986, because the judgment does not specifically set out the damage amount applicable to each item in this section. We need not review this allega-

tion of error in light of our decision concerning Point I. Point denied.

We affirm.

GRIMM, C.J., and CRANDALL, J., concur.